NEWMAN, Circuit Judge,
dissenting.
The question before the court is whether Tyco Healthcare Group LP was the owner of the patents here in suit on October 8, 2004, the date the complaint was filed in this case. The answer turns on whether an intra-company transfer document called a “Contribution Agreement,” dated April 1, 1999 between U.S. Surgical Corp. (USSC) and Tyco’s nominal predecessor The Kendall Company LP, included USSC’s rights in the patent application that led to the three patents here at issue. *1381 (The Kendall Company changed its name to Tyco Healthcare Group; for convenience I use “Tyco” in this discussion.)
The Contribution Agreement implemented a Limited Partnership between USSC and Tyco. The Agreement transferred USSC’s therein-defined Business, including all tangible and intangible property associated with the Business, with certain defined exceptions such as “any and all patents and applications relating to any pending litigation involving USSC.” The district court, relying on a contemporaneous Settlement Agreement between USSC and Ethicon, held that the patents here in suit were “relating to any pending litigation” under the aforementioned exception. The district court reasoned that USSC’s entire patent portfolio was “related,” because the Settlement Agreement granted immunity from infringement to certain defined “Immune Products.” However, it is not disputed that the patents here in suit do not relate in any way to those Immune Products. Thus the panel majority does not adopt the district court’s reasoning.
However, my colleagues instead find a new and different ground for the same result, upon which this court misconstrues the agreements. My colleagues ignore the evidence, and now affirm the dismissal on a ground not asserted against Tyco, to which Tyco had no opportunity to respond, and that is on its face incorrect. I respectfully dissent.
DISCUSSION
The relevant provisions of the Contribution Agreement concern the patent rights contributed to the partnership by USSC, as follows:
1.1 Contribution of the Assets.
(a) Subject to the terms and conditions of this Agreement, USSC hereby assigns, transfers, and delivers to the Partnership ... all of the assets, properties, and business (excepting only the “Excluded Assets,” as defined in Section 1.2 of this Agreement) of every kind and description; wherever located; real, personal, or mixed; tangible or intangible; owned or held; or used primarily in the conduct of the Business as the same shall exist on the Contribution Date (collectively, the “Assets”), and including, without limitation, all right, title, and interest of USSC in, to, and under:.... (iii) Those patents ... and other intangible property ... and any applications for the same, used primarily in the Business ... (collectively, the “Intangible Property”)....
The Excluded Assets are defined in the Agreement as follows, to the extent pertinent to this case:
1.2 Excluded Assets.
(a) [USSC] expressly understands and agrees that there shall be excluded from the Assets any assets not used in connection with the Business and the following assets and properties of USSC which are used in connection with the Business:
(ix) Any and all patents and patent applications relating to any pending litigation involving USSC----
The court elaborates on the contract, to find that “[t]he Excluded Assets provision, therefore, covers any patents or patent applications in the same family or so related in subject matter that they were or could have been reasonably asserted in or affected by a litigation pending at the time the Contribution Agreement was executed.” Maj. op. at 1379. However, even with this broad interpretation, the Excluded Assets provision does not cover the patents here in suit, for it is undisputed that neither they nor any patent in the same *1382 family were affected by litigation pending as of April 1, 1999. Nonetheless, despite the lack of any factual dispute on this aspect, the court now rules that Tyco did not meet its “burden” by showing that the patents in suit could not have been “reasonably asserted in or affected” by any other, unidentified litigation. This ruling is beyond what Ethicon argued, beyond the reasoning applied by the district court, and contrary to the unrebutted evidence. There was no suggestion of any such litigation.

The district court’s ruling

The district court relied on a Settlement Agreement between USSC and Ethicon whereby, effective April 1,1999, USSC and Ethicon settled all litigation then pending between them as to the subject matter defined in the Agreement, and granted reciprocal immunity as to specified products that were then made and sold. The district court held that “[the Settlement Agreement] bear[s] directly on who owns the patents in this case,” deeming it relevant to the Excluded Assets provision of the Contribution Agreement. The district court ruled that the patents here in suit had not been transferred to Tyco under the Contribution Agreement because these patents were “related” to the USSC/Ethicon litigation that the Settlement Agreement resolved.
There are several flaws in the path by which the district court arrived at this conclusion. There was no evidence contrary to that of Tyco’s Rule 30(b)(6) witness, Vice President Stephen Amelio. He was asked:
And is it still your testimony today that Tyco Healthcare Group LP holds title to the patents-in-suit as a result of a transfer from U.S. Surgical Corporation to the Kendall Company, which subsequently changed its name to Tyco Healthcare Group LP?
Mr. Amelio responded, “Yes, it is.” Tyco’s counsel asked;
So is it correct that the patent applications were not Excluded Assets under Section 1.2(a)(ix) of the Contribution Agreement?
Mr. Amelio responded, “That is correct.” He testified that none of the three patents nor the applications that gave rise to those patents were “relating to any pending litigation involving USSC,” the words of the Contribution Agreement. He pointed out that the patents in suit had not even issued at the time of the Contribution Agreement.[1]
On cross-examination, Ethicon’s counsel proposed to Mr. Amelio that the patents here in suit were “related” to the litigation between USSC and Ethicon that was settled on April 1, 1999, pointing to the litigations named in the Settlement Agreement and the provision that immunized certain existing Ethicon products from future suit by USSC. Ethicon’s counsel asked Mr. Amelio whether these aspects of the Settlement Agreement showed that the patents in suit were “expressly excluded” from the Contribution Agreement. Mr. Amelio responded: “I do not believe that to be correct.” Mr. Amelio directly disagreed with Ethicon’s proposed interpretation of the Contribution Agreement. Ethicon presented no contrary evidence, testimonial or documentary, in support of its proposed meaning. In contrast, the parties to the Contribution Agreement agreed as to its meaning.
*1383 The litigations identified in the Settlement Agreement were five district court cases, two in the United States District Court for the District of Connecticut and one each in the Eastern District of Virginia, the Southern District of Ohio (Western Division), and the Southern District of Florida. Three pending interference proceedings were also identified, by name and number. Ethicon never asserted that any of these prior litigations or interferences related to the patents here in suit, or the applications that preceded them, or any family member of these patents. Ethicon has also never disputed that the subject matter of the patents here in suit, concerning surgical devices for ultrasonic cutting and coagulation of blood vessels, is not related to the subject matter of the settled litigations of April 1, 1999, which concerned surgical staples and trocars. Ethicon’s theory was not that any of these litigations themselves “related” to the patents now in suit; rather, Ethicon postulated that all future USSC patents could be encumbered by the grant of immunity, on the possibility that they might relate to any of the Immune Products identified in the Settlement Agreement.
The district court accepted Ethicon’s theory. It is not disputed, however, that the patents here in suit have no relation to these Immune Products. The panel majority correctly rejected this reasoning, explaining that as construed by the district court “[t]he Settlement Agreement ... appears to cover more subject matter than was involved in pending USSC litigation.” Maj. op. at 1379. I agree that the district court adopted an overbroad interpretation of the term “relating” in the Contribution Agreement. And even on the district court’s interpretation, Tyco correctly points out that the continuing immunity under the Settlement Agreement has no relation to USSC’s transfer of ownership of its patent assets, for USSC and Ethicon expressly agreed that any assignee would be bound to respect such immunity.
However, my colleagues have adopted a new theory, whereby this court now excludes the patents here in suit from transfer under the Contribution Agreement.

This court’s new theory

The court now goes outside of any provision of any contract, and proposes that “[a] court may reasonably conclude that USSC included one or more of the unasserted infringement claims in the Settlement Agreement because USSC thought those unasserted claims to be ‘related to’ pending litigation.” Maj. op. at 1380. I repeat, we have been told of no unasserted claims, and no witness or advocate has suggested otherwise. It is indeed obscure as to how “a court could reasonably conclude” that nonexistent unasserted claims entrained these later-granted patents on unrelated subject matter. This theory was not mentioned by the district court and not pressed by any party. Tyco has had no opportunity to respond.
The aspect that appears to have diverted my colleagues is that the Contribution Agreement did not include a schedule that was referred to in Section 4.21 of the Agreement:
4.21 Litigation. Except as set forth on Schedule 4.21 hereto, there are no actions pending or threatened by or against, or involving USSC (with respect to the Business only) or any directors, officers, or employees thereof in their capacity as such or which question or challenge the validity of this Agreement, or any action taken or to be taken by USSC pursuant to this Agreement in connection with the transactions contemplated hereby or thereby, and to the knowledge of USSC, there is no valid basis for any such Action.
*1384 Ethicon’s counsel asked Mr. Amelio if the absence of Schedule 4.21 rendered the Contribution Agreement incomplete. Mr. Amelio answered, “I don’t know if that’s the case. It could be there is no pending litigations and that’s why there is no schedule.” My colleagues nonetheless find that “[a]s to what litigation was pending when the Contribution Agreement was signed, the record before us is silent.” Maj. op. at 1379. That is incorrect.
The record is extensive concerning the Settlement Agreement. Ethicon presented Mr. Amelio with documents showing that the litigations listed in the Settlement Agreement were not formally dismissed until several days after April 1, 1999; to which Mr. Amelio responded, “I’m not sure if they’re considered pending or settled litigation as a result of the settlement.” Whether those litigations were properly considered “pending” on the day of settlement is irrelevant, however, because those litigations did not relate to the patents here in suit. Ethicon did not suggest that there was any other litigation within the scope of Section 4.21, although pending litigation is a matter of public record.
My colleagues deem it irrelevant that the patents here in suit do not relate to any Immune Product or any other subject of the Settlement Agreement. My colleagues do not mention the uncontradicted testimony of Tyco’s Rule 30(b)(6) witness. Instead, the court now requires Tyco to have established that there was no pending litigation of any sort on April 1, 1999, to avoid the result whereby the absent Schedule 4.21 negates the transfer of every USSC patent and application under the Contribution Agreement. Ethicon did not identify any litigation beyond that listed in the Settlement Agreement, despite every opportunity to discover and produce such evidence. Nonetheless, my colleagues hold that the absence of Schedule 4.21, without more, removes these later-granted patents from transfer under the Contribution Agreement.
“The cardinal principle of contract interpretation is that the intention of the parties must prevail unless it is inconsistent with some established rule of law.” 11 Williston on Contracts § 32:2 (4th ed. 2009); see also King v. Dep’t of Navy, 130 F.3d 1031, 1033 (Fed.Cir.1997) (“The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute.”); Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del.2006) (“When interpreting a contract, the role of a court is to effectuate the parties’ intent.”). As a corollary, when the contracting parties’ intent is collaterally attacked by a stranger to that contract, the attacker bears the burden of coming forward with some evidence of its contrary position. Ethicon provided neither documentary evidence nor opinion testimony in support of its notion that Tyco and USSC intended to exclude the patents here in suit from the Contribution Agreement. And even if the burden of proof as to contract interpretation were deemed to lie with Tyco, as my colleagues suggest, this burden was met, for Tyco’s witness testified, without contradiction, that there was no pending litigation on April 1, 1999 relating to the three patents here in suit.
Nonetheless, the court holds that the absence of Schedule 4.21 prevents Tyco from establishing that the patents in suit were not related to any then-pending litigation. My colleagues require that “Tyco Healthcare must prove that the patents-in-suit could not have been asserted in or affected by any litigation pending as of April 1,1999.” Maj. Op. at 1379 (emphasis added). If such proof were indeed required — as I doubt — this criterion was *1385 met. The undisputed testimony and documentary evidence of the terms of the Contribution Agreement, the explicit terms of the Settlement Agreement, and the unchallenged contractual intent of the parties to each of these agreements, require the conclusion that USSC patents and applications that were not related to then-pending litigation were transferred to Tyco. There was no contrary evidence. Wherever the placement of the burden of proof, Tyco established that these patents were not within the Excluded Assets of the Contribution Agreement.
The court’s contrary reading produces the absurd result whereby no USSC patent, indeed none of the assets transferred by the Contribution Agreement, can be deemed to have been transferred, merely because Schedule 4.21, listing public information, was missing. That is not a tolerable reading of the contract, for it renders the contract ineffective for its purpose and defeats the plain intent of the contracting parties. Tyco explains that the contracting parties never would have agreed to transfer USSC’s business assets without also transferring the patents and other intellectual property rights that protected the transferee’s use of those assets. The contract text and intent, undisputed by the contracting parties and not seriously challenged by Ethicon, cannot support the conclusion reached by my colleagues. See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed.Cir.2004) (“An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous.”); NAMA Holdings, LLC v. World Market Center Venture, LLC, 948 A.2d 411, 419 (Del.Ch.2007) (“Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.”).
In sum, Tyco established, and Ethicon does not dispute, that the patents here in suit were not related to any litigation pending on April 1, 1999, whether or not the settled USSC/Ethieon litigation is deemed to have remained pending on the settlement contract’s date. It is not disputed that the subject matter here in suit is not related to any subject matter then in litigation, and that the now-asserted patents are not related to any of the products for which immunity was granted in the Settlement Agreement. Thus it is concluded that these patents were transferred by USSC to Tyco in accordance with the transfer in the Contribution Agreement. On this conclusion, the court’s denial of standing is without support in law and fact. I respectfully dissent.

. The application that led to U.S. Patent No. 6,063,050 was filed on August 14, 1997, and issued on May 16, 2000. The other two patents are in a chain of continuations of the '050 patent, and issued on applications filed on September 6, 2001 and September 11, 2002.